[No. B101744. Second Dist., Div. Four. Feb. 10, 1998.]

WILLIE L. DAVIS et al., Plaintiffs and Respondents, v.
CHARLES EUGENE HARRIS, Defendant;
DEPARTMENT OF REAL ESTATE, Real Party in Interest and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, David S. Chaney and Raymond B. Jue, Deputy Attorneys General, for Real Party in Interest and Appellant.

No appearance for Defendant.

Marshall A. Coyle for Plaintiffs and Respondents.

## OPINION

**EPSTEIN, J.**—The trial court awarded Willie L. and Joyce Davis (the Davises) $20,000 from the Real Estate Recovery Account (Recovery Account) to compensate them for fraud perpetrated by a real estate salesperson who performed acts outside the scope of his license. The California Department of Real Estate (the Department) challenges the award, arguing that it was improper under a statutory amendment to Business and Professions Code section 10471, subdivision (a) which became effective January 1, 1987. (All further statutory references are to this code.) The Department contends the amendment limits recovery to actions within the scope of the particular license held by the defendant. We agree and accordingly reverse the judgment.

### FACTUAL AND PROCEDURAL SUMMARY

The Davises were interested in purchasing a house and used Charles Eugene Harris[1] as their purported broker. In this capacity, Harris accepted a $3,000 deposit and $25,000 down payment on the house. But Harris was a real estate salesperson, not a broker. He falsely represented to the Davises that he was a broker and gave them a fictitious business card stating that he was a broker at ERA EZ Real Estate, Inc. Harris converted the money to his own use, never returning any of it to the Davises.

The Davises filed suit and were awarded a default judgment against Harris. They applied to the Department for funds from the Recovery Account. The Recovery Account is a special fund established to compensate individuals defrauded by real estate licensees. (*Vinci* v. *Edmonds* (1986) 185 Cal.App.3d 1251, 1254 [230 Cal.Rptr. 308].) The Department denied recovery. The Davises then sought judicial review, and the trial court awarded payment of $20,000 from the Recovery Account. This is the maximum amount recoverable for a single transaction. (§ 10474, subd. (c).) The Department now appeals. It argues that a 1985 statutory amendment to section

---

[1]Harris is not a party to this appeal.

10471 that became effective in 1987 precludes recovery. It also contends that, by accepting the Davises' down payment, Harris accepted compensation which violated section 10137, which provides that "[n]o real estate salesman shall be employed by or accept compensation from any person other than the broker under whom he is at the time licensed." It contends this violation also renders recovery improper. Because we find the first contention has merit, we need not discuss the second.

## DISCUSSION

The critical issue is the effect of a statutory revision to section 10471, subdivision (a), effective January 1, 1987. As pertinent here, the current statute provides: "When an aggrieved person obtains . . . a final judgment in a court of competent jurisdiction . . . against a defendant based upon the defendant's fraud, misrepresentation, or deceit, made with intent to defraud, or conversion of trust funds arising directly out of any transaction not in violation of Section 10137 or 10138 in which the defendant, while licensed under this part, performed acts for which *that license* was required, the aggrieved person may, upon the judgment becoming final, file an application with the Department of Real Estate for payment from the Recovery Account, within the limitations specified in Section 10474, of the amount unpaid on the judgment that represents an actual and direct loss to the claimant in the transaction." (Italics added.) The emphasized words, "that license," previously read "a license."

Prior to the amendment, relief was available if an innocent member of the public was defrauded by any licensed salesperson who falsely represented himself or herself to be a broker, even if the transaction was outside the purview of the salesperson's license. (*Vinci* v. *Edmonds, supra,* 185 Cal.App.3d 1251, 1255; *Dierenfield* v. *Stabile* (1988) 198 Cal.App.3d 126, 131 [243 Cal.Rptr. 598].) The Department does not dispute that the Davises were innocent members of the public, and that they were defrauded by Harris. Nor is there any dispute that Harris's actions exceeded the scope of his license as a real estate salesperson, because he purportedly represented a client in the purchase of real property. (See § 10132 [real estate salesperson must be employed by licensed broker]; *Merrifield* v. *Edmonds* (1983) 146 Cal.App.3d 336, 342-343 [194 Cal.Rptr. 104] ["[R]eal estate salesperson cannot contract in his or her own name or accept compensation except from the broker under whom he or she is licensed."].)

Appellant argues that by changing the word "a" to "that," the Legislature limited recovery to transactions which fall within the purview of the specific license held by the malefactor. The Davises disagree, arguing that the

statutory amendment merely codifies prior case law and that, as a remedial law, the statute should be broadly interpreted. As we shall explain, we find the appellant has the better argument.

In *Dierenfield* v. *Stabile, supra,* 198 Cal.App.3d 126, 132, the court noted that the 1985 statutory amendment effected a change in substance. Indeed, any material change in the language of a statute usually indicates a change in its legal effect. (*Froid* v. *Fox* (1982) 132 Cal.App.3d 832, 837 [183 Cal.Rptr. 461].)

■ To understand the change in this case, we apply standard rules of statutory interpretation. We begin, of course, with the actual language of the statute, since "it is the language of the statute itself that has successfully braved the legislative gauntlet." (*Halbert's Lumber Inc.* v. *Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238 [8 Cal.Rptr.2d 298].) "In examining the language, the courts should give to the words of the statute their ordinary, everyday meaning . . . unless, of course, the statute itself specifically defines those words to give them a special meaning . . . [¶] If the meaning is without ambiguity, doubt, or uncertainty, then the language controls. . . . There is nothing to 'interpret' or 'construe.' . . . [¶] But if the meaning of the words is not clear, courts must take the second step and refer to the legislative history. . . . [¶] The final step—and one which we believe should only be taken when the first two steps have failed to reveal clear meaning—is to apply reason, practicality, and common sense to the language at hand. If possible, the words should be interpreted to make them workable and reasonable . . . in accord with common sense and justice, and avoid an absurd result . . . ." (*Id.* at pp. 1238-1239, citations omitted.)

■ We find no ambiguity in the statutory change. We therefore must apply it as it is, unless such application would lead to an absurd result. Under the revised statute, the licensee whose acts give rise to the claim must have, while "licensed, . . . performed acts for which that license was required." (§ 10471, subd. (a).) The antecedent of "that" is the particular license which the defendant holds. Thus, a broker must perform acts for which a broker's license is required, and a salesperson must perform acts for which a salesperson's license is required. If, as in this case, a defendant's acts exceed the scope of his or her license, recovery is not permitted from the Recovery Account. No alternative reading has been suggested to us, and we find none.

The Davises argue that the amendment codified the interpretation of the former statute in *Merrifield* v. *Edmonds, supra,* 146 Cal.App.3d at page 345. They cite a statement in *Merrifield* that section 10471 requires "that the loss

arose either 'directly out of any transaction when the judgment debtor was licensed [as a broker] and performed acts for which a [broker's] license is required under this part, . . .' or 'directly out of any transaction when the judgment debtor was licensed as a [salesperson] and performed acts for which a [salesperson's] license is required under this part, . . .' " (*Ibid.*, bracketed text in original.) This language does not help them. Under *Merrifield*'s interpretation of the former statute, the Davises would not be entitled to recovery because the judgment debtor was a salesperson and performed acts for which a broker's license was required.

We agree that remedial statutes should be interpreted liberally. (*Vinci* v. *Edmonds*, *supra*, 185 Cal.App.3d at p. 1256.) But that does not mean that a court may read into the statute that which the Legislature has excluded, or read out that which it has included. (See *Overend* v. *Board of Administration* (1991) 232 Cal.App.3d 166, 171 [283 Cal.Rptr. 322].) In this case, the statutory language is unambiguous. Interpreting it as respondent urges us to do would conflict with the express language of the statute. (See *Froid* v. *Fox*, *supra*, 132 Cal.App.3d 832, 837 ["[N]o decisions have permitted additional claims [from the Recovery Account] on the theory that the liberality due remedial statutes compelled them."].)

It may well be argued that relief should be granted against the fund in a case such as this. But that argument must be addressed to the Legislature which alone can extend the scope of recovery under the statute. We cannot.

### DISPOSITION

The judgment is reversed. The parties are to bear their own costs on appeal.

Hastings, J., and Baron, J., concurred.

A petition for a rehearing was denied March 2, 1998, and respondents' petition for review by the Supreme Court was denied April 29, 1998. Mosk, J., was of the opinion that the petition should be granted.